**Application of Henry S. FALLS and Richard C. Horton.**

**Patent Appeal No. 7209.**

United States Court of Customs and Patent Appeals.

June 11, 1964.

**834**

Kenyon & Kenyon, John F. Smith, Francis T. Carr, New York City (Robert D. Fier, New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–8 in application serial No. 741,126, filed June 10, 1958, for "Multi-Colored Glass Fiber Fabrics and Methods for Manufacturing Such Fabrics." No claims are allowed.

The invention relates to a method for making multi-colored glass fiber fabrics the essence of which is a new way to color individual glass fibers with pigmenting material. Claims 1–3 are representative and sufficiently describe the invention:

"1. The method of producing multi-colored fiber glass fabrics comprising the steps of coating first yarns coated[1] [sic] with an inorganic pigment of a given color mixed with an organic size, interweaving said coated yarns with second yarns of a different color to produce a fabric, heating said fabric at a temperature at which said organic size is removed and said pigment remains on said coated yarns.

"2. The method as set forth in claim 1 wherein said inorganic pigments are constituted by metallic salts which are colored.

"3. The method as set forth in claim 1 wherein said organic size is constituted by polyvinyl alcohol."

According to appellants, the gist of the invention is twofold: (1) using *inorganic* pigment mixed with sizing agent to coat the fibers; and (2) *removing the size* by heat after weaving colored fibers into fabric.

By way of background, we quote from appellants' specification:

"It is conventional practice to coat or size glass fibers with an organic lubricant and binding agent, such as gelatin or starch. Such sizes act to facilitate the twisting, weaving and plying of glass fibers, for in the absence of sizes, the rubbing and chaffing encountered in a loom renders weaving operations more difficult.

"After the glass fibers are woven into a fabric, it is necessary to remove or de-size the fabric * * *.

"The removal of organic sizes can be accomplished by * * * [inter alia] actually burning the size from the glass fiber. The most successful and widely used technique for desizing and finishing glass fabrics is known commercially as the 'Coronizing' process. In this process, after the sized fabric is woven it is first subjected to heat at approximately 1200 degrees Fahrenheit.

"This intense heat ignites the organic sizes and leaves the fabric clean. * * *

"The standard 'Coronizing' process is by its very nature limited to the production of solid color glass fiber fabrics, in that the single color can only be introduced after the weaving operation and subsequent to the burning off of the organic size. It is not possible to apply organic dye-stuff in the warp yarn of the fabric, for these dyes would be completely degraded and volatilized in the 'Coronizing' oven.

* * * * * *

" * * * it is an object of the invention to provide a novel process

---

1. Appellants' counsel said at oral hearing "coated" should not be in the claim.

in which a warp of fibrous glass yarn is treated with an inorganic pigment and an organic resinous binder, the treated warp yarns being interwoven with a filling yarn of contrasting color to produce a fabric which is then heated to remove the organic resinous binder, whereby the inorganic pigment remains on the warp."

The sole issue is patentability in view of the following prior art:

Waggoner     2,593,817 Apr. 22, 1952
Armitage et al. 2,623,834 Dec. 30, 1952

Waggoner, like appellants, was concerned with coloring glass fibers. His specification says:

"Many of the difficulties in coloring glass fibers stem from the perfectly smooth and round surfaces the fiber has developed in forming. This characteristic coupled with the inertness of glass provides for little physical or chemical anchorage of coloring substances to the glass fiber surfaces.

    *    *    *    *    *    *

"[An object of my invention] * * * is to provide a method for treating glass fibers by forming substances firmly associated with the surfaces of the glass fibers and which functions as a receptive base for coloring agents or acts directly as a coloring agent and which in either case adds to the abrasion resistance, resistance to weave slippage and delusters the glass fibers in proportion to its concentration on the glass fiber surfaces.

"To color glass fibers in accordance with this invention, I treat glass fibers in fabric form with a composition constituted with an organic compound, preferably a salt, of a metal having a desirable coloring oxide and an organo-silicon fluid in which the organic compound is soluble or compatible therewith in solvent solution.

"I have found that the organo-silicon fluid upon thermal treatment at relatively high temperature on the glass fiber surfaces reacts in a manner to harden or set on the glass fiber surfaces * * *.

"I have found that thermal reaction on the glass fiber surfaces of an organic compound or salt constituted with a metal having coloring oxides causes the removal of the organic component, leaving what is believed to be the corresponding metal oxide or a reaction product of the metal component on the glass fiber surfaces. * * *

"My invention contemplates the treatment of glass fibers with a combination of metallic salts compatible with the organo-silicon compounds to provide for a possible one-step treatment of the glass fibers wherein the heat required to cure or convert the organo-silicon compound is at the same time capable of causing the desired chemical rearrangement of the organic metallic compound to form coloring reaction products of a colloidal nature uniformly distributed all over the surfaces of the glass fibers or filaments."

Further the specification says:

"By the addition of colloidal silica or metal oxides to the treating composition, further bulking and delustering effect will be secured, and additional color of a permanent character will be derived if the metal oxides are coloring oxides of the type described."

Armitage deals with applying fugitive tints to nylon for identification purposes. The specification says:

"For the purpose of identifying fibres, yarns, threads and the like, which have particular properties, it is a common practice to treat such fibres, yarns, threads and the like with sighting colours, that is to say to apply fugitive tints which can be removed—usually by a simple scouring operation—after the fibres,

yarns and threads have been used in weaving, knitting or other operations."

The patent points out that conventional organic dyestuffs cannot be used for fugitive dying since steaming operations to which fibers may be subjected prior to tint removal set the dyes making them difficult to remove by soap-and-water scouring.

The patent further says:

"We have now found that these difficulties can be obviated by using inorganic pigments instead of dyestuffs for the sighting colours. The pigments can be removed from the nylon by a simple scouring operation even when the nylon material has been subjected to pressure steaming processes.

\* \* \* \* \* \*

"The pigment may be supplied to the surface of the nylon fibres, yarns or threads by simply treating the nylon with a dispersion of the pigment in water \* \* \*. Or the pigment \* \* \* may be added to the warp size or knitting gum which is applied to the nylon \* \* \*."

The claims stand rejected as "unpatentable over Waggoner in view of Armitage et al." [2]

The Patent Office position is stated in the solicitor's brief thus:

"It is clear that Waggoner teaches coloring fiber glass fabrics with inorganic pigment. The reference teaches the use of an organic salt compound in which the organic component is removed by heating leav-

ing inorganic pigment \* \* \*. Further, inorganic pigment may be used in the treating composition \* \* \*. The reference also teaches that an organic size may be used \* \* \*. It is obvious from Armitage et al. that the inorganic pigment may be mixed with the organic size \* \* \*. The heating in Waggoner to remove the organic component would also remove the organic size. One of the most obvious ways to produce a multi-colored fabric would be to interweave yarns of different colors."

Appellants argue that Waggoner teaches "organic" not "inorganic" materials as pigments; that the heating step of Waggoner is to cause "thermal reaction" of organo-silicon compound, not to remove sizing; that Armitage et al. is nonanalogous art since it deals with *fugitive tinting* of *nylon*, not *permanent coloring* of *glass fibers:* and that the teaching in Armitage et al. that size and pigment may be combined as coating composition "does not cure the \* \* \* deficiency in Waggoner."

We agree with appellants. While Waggoner does teach the use of metal oxides (inorganic pigments) as adjuncts to the composition of organo-silicon and organo-metallic salts, we find no suggestion to employ such oxides *in lieu of* organo-metallic salts. The clear import of Waggoner's teaching is that metal oxides are added *only* to give "further bulking and delustering effect" and "additional color of a permanent character." We do not think such teaching renders obvious the use of oxides alone.[3]

2. The board, noting the examiner's rejection "unpatentable over Waggoner in view of Armitage et al.," concluded their opinion thus: "We, therefore, find the claims reading on the process disclosed by Waggoner with the Armitage et al. teaching \* \* \* which [process] we do not consider patentable." Appellants take this to be an "anticipation" rejection under 35 U.S.C. § 102. The solicitor, on the other hand, considers it an "obviousness" rejection under 35 U.S.C. § 103. In our view of the case the point is moot

since the rejection cannot stand under either interpretation.

3. We are not unaware that the part of appellants' claims which reads "coating first yarns \* \* \* with an inorganic pigment \* \* \* mixed with an organic size" does not distinguish over a coating process in which the coating composition merely *contains* inorganic pigment. Waggoner is such a process. However, for reasons hereinafter expressed, other limitations in the claims do distinguish over Waggoner.

837

As to the heating step, it is quite clear that Waggoner does not heat to remove organic size. The heating only "cures or converts" the organo-silicon compound and "causes the removal of the organic *component* [of the organo-metallic salt], leaving what is believed to be the corresponding metal oxide or a reaction product of the metal component [presumably with organo-silicon and glass] * * *." (Emphasis ours.) Heating to "cure or convert" organo-silicon compound is not heating to remove size as called for by appellants' claims.

We find nothing in Armitage et al. even remotely suggesting heating to remove size. The removal of size in Armitage et al. is by scouring which the patentees describe as "a simple treatment of the textile [nylon] materials in a warm solution of soap or other detergent * * *."

In short, we consider appellants' process to be a new and unobvious solution to an admittedly old problem. The decision of the board is reversed.

Reversed.